UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATS OF AMERICA,

    Plaintiff,

    -vs-                                                       Case No. 08-CR-36

OSKAR SHELDON,

    Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Oskar Sheldon, by his attorney, Thomas J. Erickson, pursuant to the Due Process provisions of the Fifth Amendment to the United States Constitution as well as Rule 32(c) of the Federal Rules of Criminal Procedure, respectfully submits the following Sentencing Memorandum which requests a downward departure from the sentencing guidelines based on an analysis of factors set forth in 18 U.S.S.G. s. 3553(a).

It is expected that the pre-sentence report will conclude, upon application of the 2008 Sentencing Guidelines Manual, that the Defendant is in a guideline imprisonment range of 292 to 365 months based on an offense level of 38 and a criminal history category III. Count One carries a mandatory minimum sentence of ten years imprisonment. The pre-sentence report does not award the Defendant a three level decrease pursuant to U.S.S.G. §§3E1.1(a) and (b). The government has stated in its response to the PSR that the Defendant should be given three acceptance points. If the court does grant the acceptance points, then the guideline imprisonment range would be 210 to 262 months based on an offense level of 35.

1

Pursuant to the plea agreement, the government will recommend a sentence within the sentencing guidelines. The Defendant is requesting a sentence of ten years imprisonment.

## I. SENTENCING METHODOLOGY

Post-*Booker*, a court may impose a sentence with the applicable guideline range, or Impose a non-guideline sentence if it is justified by. 3553(a) factors. *See United States v. Crosby*, No 03-1675, 2005 U.S. App. LEXIS 1699 at 25 (2d Cir. Feb 2, 2005).

Title 18 U.S.C. s. 3553(a) requires the court to consider seven factors:

1. The nature and circumstances of the offense and history of characteristics of the defendant;

2. The need for the sentence imposed

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. The kinds of sentences available;

4. The sentencing range established by the guidelines;

5. Any pertinent policy statements issued by the Sentencing Commission;

6. The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

7. The need to provide restitution to the victims of the offense.

After considering all of these factors, a court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." *United States v. Galvez-Barrios*, No. 04-CR-14, 2005 U.S. Dist. LEXIS 1997, at *16-17 (E.D. Wis. Feb. 2, 2005).

In *Gall v. United States*, 552 U.S.-, 2007 WL 4292116 (Dec. 10, 2007), the Supreme Court rejected an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range. The Court made it clear that as long as the record demonstrates that a district court has considered the s. 3553(a) factors and supported its sentence with a rationale that is supported by the record, the sentence shall stand.

## VIII. SENTENCING ANALYSIS

The s. 3553(a) factors can be grouped into three general categories: the nature of the offense, the character of the defendant, and the needs of the public and victims of the offense.

### The Nature of the Offense

The Defendant is one of thirty people charged in connection with a marijuana distribution organization in Milwaukee. The Defendant was the broker of the marijuana, i.e., he procured the marijuana in California and arranged for its delivery in Milwaukee to, primarily, David LeBlanc who operated a wide-ranging distribution network on the east side of Milwaukee. A large portion of the marijuana came from marijuana grows operated by co-defendants Aaron Johnson and Zacariah Gillis. The Defendant's right hand man was Patrick O'Brien. His main delivery driver was Desiree Reyes. The

3

Defendant is responsible for participation in approximately 700 kilograms of marijuana to various customers in the Milwaukee area.

The "structure" (for want of a better term) was unsophisticated and rather haphazard. Friends sold to friends who sold to acquaintances in an environment that can best be described as a marijuana subculture. The profits were not large by drug dealing standards and it appears, consistent with the Defendant's substance abuse addled life, he spent what little money he made about as quickly as he made it.

In mitigation, it should be noted that the Defendant was not involved in any acts of violence. Furthermore, there were no weapons involved in any of his transactions. The Defendant was not a large scale grower of marijuana; he was a broker. He had access to product in California and a customer base in Milwaukee. He connected A to B. He had no financial or proprietary interest in any of the grows in California that supplied marijuana to this conspiracy. Also, and importantly, he did not sell any drug other than marijuana. (It is true that the Defendant did grow during two seasons in 2006 and 2007. The amount he grew was 7 pounds which he used for his personal consumption. He did not sell any of the marijuana which was grown in compliance with and within the limitations of his valid California medical marijuana card.)

The sentences of the other principals in this conspiracy are worth noting: Aaron Johnson, the large scale grower, was sentenced to ten years; Patrick O'Brien was sentenced to ten years; Desiree Reyes, the driver of multiple kilogram quantities of marijuana on numerous occasions was sentenced to probation. David LeBlanc has not yet been sentenced and Zacariah Gillis has not been arrested.

The Defendant has fully accepted responsibility. The PSR has argued against the application of the three point deduction for acceptance because of his fleeing to Mexico and purported statements regarding an intention of growing marijuana there. The Defendant has been penalized for fleeing to Mexico via the two point obstruction enhancement to which he does not object. His behavior, otherwise, has exuded acceptance of responsibility. According to Application Note 1 of §3E1.1, appropriate considerations include: (a) truthfully admitting the conduct comprising the offense; (b) withdrawal from criminal conduct; and (e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense; and (h) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

He pleaded guilty at an early stage in the proceedings, and has fully cooperated in many other important aspects of this case including giving descriptions of property and ownership interests in various assets which were the fruit of the conspiracy. He did not engage in further drug dealing after his initial arrest. He turned himself in to authorities in Mexico after two months. He began alcohol and drug treatment at Seadrunar in Seattle and for six months at the Henry Ohlhoff House in San Francisco. Finally, and most importantly, the government, which is in an unique position to gauge acceptance, agrees that the Defendant should be given the three points for acceptance of responsibility and for pleading guilty in a timely manner.

Accordingly, the Defendant asks that the court consider these mitigating factors in its analysis of the nature of the offense when determining a sentence sufficient but not greater than necessary to serve the purposes of sentencing.

## The Character of the Defendant and the Needs of the Public

Picking up the threads of the social history report submitted by Jacqueline Schmidt, the Defendant's development, his involvement in drug dealing, and his adjustment to life as an adult have all been greatly affected by his chronic alcoholism and drug use.

His personal history regarding drug and alcohol use and his involvement in selling drugs at a young age is remarkable. By the sixth grade, he was not only drinking and smoking marijuana consistently, he had already begun selling marijuana. (His drug use combined with his symptoms of Attention Deficit Disorder led to an early exit from school.) With some minor breaks here and there, the Defendant has been on a straight-line of substance abuse and selling pot for most of his adolescence and all of his adulthood. At age twenty-nine this is the only life he has known. His arrest, then, has been the beginning of a new life. Finally, with the stops and starts to which alcoholics are prone, he has begun to grasp the impact of his lifestyle on this family, but more importantly on his own life. The Defendant is a young man of great intelligence and insight. The word "potential" runs through the letters about the Defendant and it is time for him to utilize that potential, not for brokering marijuana deals, but for being a merchant marine or a dog trainer or a Spanish language interpreter or pretty much anything else he puts his mind to.

Clearly, for the Defendant to be fully rehabilitated, he must come to terms with his chronic alcohol and drug abuse. His criminal record consists of a number of minor misdemeanor offenses and municipal citations **all of which** were committed when he was inebriated and all occurring between the ages of 18 and 24. The first step of getting sober

has been the "cold turkey" of his last eleven months incarceration. He has also completed Trash Negative Thinking program in jail. Next up should be continued AODA classes in prison including the BOP 500 hour drug treatment program. Once he has a handle on his addictions, the Defendant will not pose a danger at all to the community. Indeed, he will, given his intelligence and motivation, become a useful and contributing member of society.

The Defendant has lived a life steeped in the marijuana subculture. He grew up in an environment in Washington State in which marijuana use was readily accepted—to the point that he smoked marijuana with the parents of his friends when he was a teenager. At seventeen, he moved to California where marijuana use has been largely decriminalized. He lived for the past several years in northern California where marijuana grow operations are not uncommon and where law enforcement takes a lax view of large scale marijuana production. For several years he has held a valid prescription marijuana card issued by the state of California where in Los Angeles there are now more prescription marijuana stores than there are Starbucks coffee shops. While in no way condoning or excusing the Defendant's criminal conduct, his environment certainly has played a role in how he perceived his lifestyle and how he rationalized his selling of marijuana to his friends or to associates in Milwaukee who were, by and large, young men and women with the same attitudes toward marijuana as he possessed.

The guideline imprisonment range is an astoundingly high 210 to 262 months, or approximately 18 to 22 years. This type of sentence would be nothing less than draconian. The Defendant must pay his debt to society, surely, but a sentence which would effectively deprive him of his thirties and most of his forties would in no

conceivable manner be a just one.  It is hoped and contemplated by the Defendant and his family that this prosecution has signified the beginning of the Defendant's entry into a life of earning self-respect, warranting support and trust, and contributing to society.  A break with society of any more than ten years would do nothing more than warehouse the Defendant.  The goals of sentencing—rehabilitation, protection of society, and punishment will be amply satisfied by a sentence of ten years.

### III. CONCLUSION

The Defendant, at age 29, will not pose a threat a danger to the public nor is he likely to re-offend after a lengthy imprisonment of ten years.  The Defendant's criminal conduct was connected to a lifestyle that can be and has already begun to be changed.  He has fully accepted his personal responsibility and realized the magnitude of his behavior on himself and on society where, he realizes his drug dealing has contributed to the ills of society..

The Defendant's sole rehabilitative need is to comply with alcohol and drug counseling and maintain absolute sobriety.  The Defendant is an ideal candidate for the Bureau of Prisons' intensive 500 hour drug treatment program.

While fully recognizing the extent of the Defendant's conduct, the Defendant asks the court to consider the mitigating qualities of the nature of the offense, the unique circumstances of his background including his addictions, the nature of his criminal record, and his positive character traits as factors in determining a fair sentence.

For the other reasons so described, the court should find that there are mitigating circumstances in this case which are not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and which warrant a downward

departure. The Defendant respectfully asks the court to consider a sentence of 120 months which is sufficient but not greater than necessary to serve the purposes of sentencing.

Dated this 15th day of January, 2010.

Respectfully submitted,

/s/
Thomas J. Erickson
Attorney for Defendant

Address and Phone:
611 N. Broadway, Ste. 200
Milwaukee, WI 53202
(414) 271-0678